Filed 1/21/15  In re M.H. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.H. et al., Persons Coming Under the Juvenile Court Law. | B255919 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROXANA G.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK88984) |

APPEAL from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

―――――――――――――

INTRODUCTION

Roxana G. appeals from the orders of the juvenile court denying her petition for modification (Welf. & Inst. Code, § 388)[1] and terminating her parental rights to Michael H. (age 4) and Angel H. (age 3) (§ 366.26). We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The original petition naming Arturo, Michael, and Maribel*

The juvenile court declared Arturo M., Michael, and their sister Maribel A.[2] dependents under section 300, subdivision (b) in October 2011, after finding true the allegations in the petition that Roxana has a history of abusing alcohol, amphetamines, and marijuana, which abuse renders her incapable of providing her children with regular care and supervision. The Department of Children and Family Services (the Department) had filed the petition after a hospital social worker reported that Roxana was pregnant with her fourth child and admitted having used methamphetamines two days earlier. Arturo was also exposed to drugs in utero. The juvenile court detained Michael and removed the other children from Roxana's custody (§ 361, subd. (c)).

a. *Roxana has a long history of drug abuse*.

Roxana, who was 25 years old when the petition was filed, has been using methamphetamines since she was 18. Drug use was " 'an every day thing,' " she admitted. Roxanna was arrested three times for drug-related crimes and was also arrested for forgery and assault with a deadly weapon.

Roxana also has a history with the Department. The Department removed Arturo from her custody at his birth in 2006 because of Roxana's history of substance abuse. Roxana received family maintenance services, spent 10 months in inpatient rehabilitation, four months in an outpatient program, and attended Narcotics Anonymous (NA) meetings. Roxana and Arturo reunified.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     Maribel is not at issue in this appeal.

b. *The children have been separated for most of their lives.*

Each of Roxana's children has a different father and Roxana regularly left the children in the care of their different paternal grandmothers for long periods of time.

Michael was just nine months old when he was detained from Roxana and released to his father. Michael's father[3] was arrested in Arizona on charges of aggravated assault with a deadly weapon and kidnapping, among other crimes, and so two months later, in September 2011, Michael moved in with his paternal grandmother, Mrs. H. Arturo and Maribel were placed elsewhere.

2. *Jurisdiction over Angel because of Roxana's continued drug abuse and removal of Angel and Michael from custody*

In October 2011, Roxana entered Shields for Families drug treatment program and in November 2011 she gave birth to Angel, her fourth child. Nonetheless, after a hiatus between October and November 2011, she resumed abusing drugs. She failed to appear three times for drug testing in December 2011 and produced a positive drug test result for amphetamines in January 2012.

The positive drug-test result caused the Department to detain Angel from Roxana in January 2012, when he was two months old. The Department placed him with his paternal aunt, Vanessa H., and filed a petition under section 300, subdivision (b) alleging Roxana's continuing drug abuse. The juvenile court declared Angel a dependent and removed him and Michael from parental custody. As with the other children, the court ordered Roxana into a full drug and alcohol program with aftercare and random or on-demand drug and alcohol testing every other week, to undergo individual counseling to address case issues, and to complete a parenting class. The court ordered that Roxana's visits with her children be monitored.

a. *Roxana continued to abuse drugs*

Between February and June 2012, Roxana failed to appear for drug test eight times. She enrolled in a treatment program at Eden in June 2012, but refused to submit to

---

**3**     Michael's father is not a party to this appeal.

drug testing and failed to participate as required. In August, 2012, Roxana was terminated from that program for having failed to attend or to make any progress.

Finding Roxana was not in compliance with the case plan, the juvenile court terminated family reunification services for her and all of her children and set the permanency planning hearing (§ 366.26).

b. *Michael and Angel have been separated for most of their lives*.

Michael thrived with Mrs. H., where he had been living since he was 10 months old. He called Mrs. H. "mom." Mrs. H. is "very loving" and attends to the child's needs.

In August 2012, when he was nine months old, Angel was placed with Ms. P., where he remained until December 2013. He was removed, through no fault of his own, and placed in December 2013 with Mr. and Mrs. B.R. with whom he bonded.

The caregivers for Angel and Michael facilitated regular, weekly sibling visits. Arturo began sibling visits in August 2013 and enjoyed them. The visits remained a weekly event as late as April 2014.

3. *Roxana's section 388 petition*

Roxana's petition for modification, dated December 17, 2013, requested an additional six months of reunification services and unmonitored visits. As changed circumstances, Roxana explained that she enrolled in Clear Path Counseling Center's substance abuse program, which also provided parenting classes and individual counseling. She claimed she continued visiting her children as often as permitted. The modification was in the children's best interest, Roxana explained, because she is their mother and "a better person now that I've demonstrated my sobriety." She claimed her children were bonded with her and that they would benefit from a relationship with a clean, sober, and determined mother.

Attached to the petition was a letter from Clear Path Counseling Center indicating that Roxana enrolled in its program in December 2012, i.e., three months after the juvenile court terminated her reunification services. There, she completed 51 sessions of parenting classes, 52 sessions of substance abuse classes, and 18 sessions of individual counseling. Roxana's counselor indicated that Roxana was very receptive and responded

4

appropriately in her group sessions. Roxana had "great attendance." As of August 2013, Roxana was "*becoming committed* to maintaining her sobriety." (Italics added.) The juvenile court granted a hearing on the section 388 petition.

The Department recommended the juvenile court deny the section 388 petition because Roxana's visits with the children were inconsistent. She was often very tardy for visits, and she made inappropriate comments to the children, which made them sad. Also, Clear Path was not Departmentally-approved as it did not offer individualized programs that focused on specific issues. Rather, it offered group sessions with weekly rotating topics. Moreover, Clear Path's counselors were not licensed therapists.

At the contested hearing on the section 388 petition in March 2014, Roxana testified that she was aware that Clear Path was not approved by the Department but claimed she had obtained permission from the social worker to "go ahead and do it." As for her drug rehabilitation program, Roxana testified that Clear Path discussed methods of preventing relapse and recommended Roxana attend NA meetings and get a sponsor after leaving that program. Roxana could not name the first of the 12 steps and she never got a sponsor. She stopped attending NA meetings. Instead, she goes to church. Roxana's description of her visits with her children conflicted with the Department's records.

The juvenile court denied Roxana's petition in March 2014. The court found she failed to show changed circumstances given the length of her substance abuse compared to the length of her sobriety. The court observed she presented no evidence about her continued sobriety as the last drug test in evidence occurred in August 2013, seven months before the hearing. The court was also concerned about the fact that Clear Path was not an approved program and Roxana showed no understanding about how to prevent relapse.

Just over a week after the court denied Roxana's section 388 petition, the caregivers reported that Roxana appeared at a March 2014 visit apparently under the influence.

The juvenile court terminated Roxana's parental rights (§ 366.26) to Michael and Angel on April 24, 2014. The court continued the section 366.26 hearing for Arturo to July 24, 2014. Roxana filed her notice of appeal on April 24, 2014 challenging the termination of parental rights to Michael and Angel and "all orders" involving Michael and Angel.

CONTENTIONS

Roxana contends the juvenile court erred in denying her section 388 petition and in rejecting the sibling-relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(v)).

DISCUSSION

1. *The juvenile court did not err in denying Roxana's section 388 petition*

Initially, the Department argues that we lack jurisdiction to consider Roxana's challenge to the denial of her section 388 petition because she did not refer to that ruling in her notice of appeal. " '[I]t is, and has been, the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' [Citations.] A notice of appeal 'is sufficient if it identifies the particular judgment or order being appealed.' [Citation.]" (*In re Joshua S*. (2007) 41 Cal.4th 261, 272.) An appellate court will liberally construe an appeal where: (1) the order is appealable; (2) the notice of appeal is timely; and (3) there is no prejudice to the Department as respondent. (*In re Madison W*. (2006) 141 Cal.App.4th 1447, 1449–1450.)

Here, the order denying Roxana's section 388 petition is appealable (§ 395). Roxana's notice of appeal was timely, as it specified that she appealed from the juvenile court's order under section 366.26 terminating her parental rights, entered on April 24, 2014, less than 60 days after the March 6, 2014 denial of her section 388 petition. As the notice of appeal referred to "all orders," it included within its scope all orders entered within 60 days of the notice, with the result the Department was not surprised or prejudiced. Therefore, we liberally construe Roxana's notice of appeal to encompass the

6

order denying her section 388 petition, and hence have jurisdiction to review that order. (*In re Madison W.*, *supra*, 141 Cal.App.4th at pp. 1449–1450.)

Turning to the substance of Roxana's challenge, section 388, subdivision (a) permits a parent to petition the juvenile court for an order to change, modify, or set aside a previous order on the grounds of change of circumstances or new evidence. (*In re J.C.* (2014) 226 Cal.App.4th 503, 525, citing § 388, subd. (a).[4]) "The parent, however, must also show that the proposed change would promote the best interests of the child. [Citations.] [¶] Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion. [Citation.] ' . . . " [']The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citation.]" (*In re J.C.*, *supra*, at pp. 525-526.)

Roxana contends that she demonstrated "not merely changing circumstances, [but that she] was finally serious about her sobriety" as she testified she has been drug free since January 2012. The record supports the juvenile court's finding otherwise. Roxana has been abusing methamphetamines for nearly a decade and her drug use is entrenched as she described it as " '*an every day thing*.' " (Italics added.) As late as August 2012, Roxana had logged numerous refusals and failures to test, all of which constitute dirty results. Her last drug test in evidence was from August 2013, seven months before the

---

**4**      Section 388 provides in relevant part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . through a properly appointed guardian may, *upon grounds of change of circumstance or new evidence*, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. . . . [¶] . . . [If] the court orders a hearing pursuant to subdivision (d), the court shall modify the order . . . *only if the court finds by clear and convincing evidence that the proposed change is in the best interests of the child*." (*Id.*, subds. (a)(1) & (2), italics added.)

7

hearing on her section 388 petition. Just after that hearing, the caregivers reported Roxana appeared to be under the influence during a visit with the children. Although Roxana completed Clear Path, that program was not Departmentally approved and her counselor was not a licensed therapist. Even assuming Clear Path met the Department's requirements, Roxana attended that program for only eight months after unsuccessfully attending three other drug rehabilitation programs since 2006. Furthermore, Clear Path merely stated she was "*becoming committed*" to maintaining sobriety i.e., she was changing; it did not confirm that Roxana had a longstanding commitment to sobriety. (Italics added.) Moreover, Clear Path advised Roxana to obtain a sponsor and attend NA. Yet, she could not explain to the court why she did not have a sponsor and she ceased going to NA soon after leaving Clear Path. Clearly Roxana did not benefit from the NA meetings she did attend as she could not explain any of the 12 steps. The evidence amply supports the juvenile court's conclusion that in the context of such a long-standing and entrenched addiction and unsuccessful attendance at three other drug rehabilitation programs, any sobriety at this point was tenuous at best. Having failed to demonstrate an actual change in circumstances, Roxana could not demonstrate it would be in the children's best interest to prolong the reunification period.

Nor has Roxana demonstrated that a resumption of reunification services at this late date would be in the children's best interests. (§ 388, subd. (a).) "[A]fter reunification efforts have terminated, the court's focus shifts from family reunification toward promoting the child's needs for permanency and stability. [Citation.] 'A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child.' [Citation.]" (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 527.) Here, a further delay in permanency and stability simply to enable Roxana to continue to work on her sobriety is not in the children's best interest. Roxana's best interests are "simply no

8

longer the focus." (*Ibid.*)[5] The juvenile court did not abuse its discretion in denying Roxana's section 388 petition.

2. *The exception in subdivision (c)(1)(B)(v) of section 366.26 does not apply to prevent adoption in this case.*

Roxana's notice of appeal challenges the termination of her parental rights to Michael and Angel only. This appeal therefore does not relate to any orders concerning Arturo or Maribel.

The Legislature has declared a strong preference for adoption over the alternative plans if the dependent children are adoptable.[6] (*In re S.B.* (2008) 164 Cal.App.4th 289, 297.) Once the juvenile court finds that the children are adoptable, "the court shall terminate parental rights unless" the court "finds a compelling reason for determining that termination would be detrimental to the child due to" one of the delineated exceptions. (§ 366.26, subd. (c)(1) & (c)(1)(B).) Only if a compelling reason for applying an exception appears may the court select a plan other than adoption.

The exception to adoption on which Roxana relies is that found based on the relationship between the children -- who are the subject of selection and implementation proceedings -- and their siblings. (§ 366.26, subd. (c)(1)(B)(v).) Under this exception, the juvenile court balances the benefit of the child's relationship with his or her siblings against the benefit to the child of gaining a permanent home by adoption. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 951.) That is, the court weighs the benefit to the child in

---

**5**      Roxana attempts to fit her case into the factors listed by the court in *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530-532. However, we need not consider these factors because "after reunification services have terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 527.) Roxana's section 388 petition and her appellate brief, however, fail to address how renewed reunification at this stage would advance permanency and stability. She really argues only that she has changed her life around.

**6**      Roxana does not challenge the juvenile court's finding here that Michael and Angel are adoptable.

9

maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster-home placement, against adoption, which is designed to confer security, belonging, and permanence. (*Ibid.*)

Subdivision (c)(1)(B)(v) of section 366.26 applies when termination of parental rights would be detrimental to the child because "[t]here would be substantial interference with a child's sibling relationship . . . ." To find "substantial interference," the juvenile court evaluates "the nature and extent of the relationship, including . . . whether the child was raised with a sibling in the same house, . . . shared significant common experiences or has existing close and strong bonds, . . . whether ongoing contact is in the child's best interest, including the child's long-term emotional interest." (§ 366.26, subd. (c)(1)(B)(v).) If the court concludes terminating parental rights would substantially interfere with the sibling relationship, then it must "weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption." (*In re L. Y. L., supra*, 101 Cal.App.4th at p. 952.) However, if the relationship is not sufficiently significant to cause detriment by its termination, then no substantial interference with that relationship exists. (*Ibid.*)

The parent carries the burden to show a substantial interference with a sibling relationship. (*In re L. Y. L., supra*, 101 Cal.App.4th at p. 949.) The parent must demonstrate "the existence of a significant sibling relationship, the severance of which would be detrimental to the child." (*Ibid.*) We review the juvenile court's findings for substantial evidence. (*Id*. at p. 947.)

Here, the record contains no evidence that Michael and Angel have any relationship such that its severance would be detrimental to them. These two children never lived together and Michael only lived with Arturo for the first nine months of Michael's life, and even then, Roxana would leave the children with their various grandmothers for long periods. Michael and Angel were removed from Roxana's custody in their early months and have been in separate foster homes for most of their lives. The only shared experiences these children had was playing together during sibling visits, which as Roxana notes, did not occur for very long. Nor does the record contain

10

evidence that any bond existed between these children. The children do not have a relationship that is sufficiently significant to cause detriment by its termination or to justify denying the children the permanency of adoption.

Roxana contends that the juvenile court "did not evaluate whether termination of parental rights would substantially interfere with the sibling's [*sic*] relationship or whether continuing the sibling relationship outweighed the benefit of adoption." To the contrary, the juvenile court heard Roxana's argument and stated, "The Court has read and considered the evidence provided to the Court, makes the following findings and orders. [¶] . . . [¶] The Court notes that the mother has not met her burden of showing that an exception applies. There's no evidence before the Court that – to meet that – the burden of the sibling exception." The court clearly evaluated the evidence relevant to this exception to adoption and found the exception did not apply.

Nor is this finding error. Roxana did not carry her burden; she argued to the juvenile court only that "the children have a strong sibling bond that would result in irreparable damage if the children were adopted out into separate homes." She made *no* showing the children shared significant common experiences, or that they have close and strong bonds. Rather, Roxana undermines her own position by arguing on appeal that "[t]here was already substantial interference with the sibling's [*sic*] relationship and no substantial evidence it would change after the adoption." The juvenile court did not err in finding that the sibling relationship exception to adoption did not apply.

DISPOSITION

The orders are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.



We concur:



EDMON, P. J.



KITCHING, J.